**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Telephone: (818) 347-3333
Facsimile: (818) 347-4118

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

A.H., a minor, individually and as successor in interest to decedent, Richard Hayes, by and through his Guardian ad Litem, Tiffany Hayes; S.H., a minor, individually and as successor in interest to decedent, Richard Hayes, by and through her Guardian ad Litem, Tiffany Hayes; and TIFFANY HAYES, individually;

     Plaintiffs,

 vs.

COUNTY OF LOS ANGELES; and DOES 1-10, inclusive.

     Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment—Detention and Arrest (42 U.S.C. § 1983)
2. Fourth Amendment—Excessive Force (42 U.S.C. § 1983)
3. Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)
4. Substantive Due Process (42 U.S.C. § 1983)
5. Municipal Liability—Inadequate Training (42 U.S.C. § 1983)
6. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
7. Municipal Liability—Ratification (42 U.S.C. § 1983)
8. False Arrest/False Imprisonment
9. Battery (Wrongful Death)
10. Negligence, Negligent Infliction of Emotional Distress, Negligent Training (Wrongful Death)
11. Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act (42 U.S.C. § 12132 and 29 U.S.C. § 794
12. Violation of Cal. Civil Code § 51.7
13. Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**

1

## **COMPLAINT FOR DAMAGES**

2       COME NOW, Plaintiffs A.H., individually and as a successor-in-interest to

3  Richard Hayes, deceased; S.H., individually and as successor-in-interest to Richard

4  Hayes, deceased; and Tiffany Hayes, individually and as successor-in-interest to

5  Richard Hayes, deceased, for their Complaint against Defendants County of Los

6  Angeles; and DOES 1-10, inclusive, and allege as follows:

7

8

## **JURISDICTION AND VENUE**

9     1.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and

10  1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United

11  States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the

12  United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs'

13  claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims

14  are so related to the federal claims that they form part of the same case or controversy

15  under Article III of the United States Constitution.

16     2.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because

17  Defendants reside in this district and all incidents, events, and occurrences giving rise

18  to this action occurred in this district.

19     3.     On November 22, 2021, Plaintiffs presented to the County of Los

20  Angeles their Claims for Damages based on the acts, omissions, damages, and

21  injuries herein complained of, pursuant to Government Code § 911.2.  On December

22  6, 2022, Defendant County of Los Angeles rejected Plaintiffs' claims.

23  / / /

24  / / /

25  / / /

26

27

28

1

**INTRODUCTION**

2  4.  This civil rights and state tort action seeks compensatory and punitive

3 damages from Defendants for violating various rights under the United States

4 Constitution and state law in connection with County of Los Angeles Sheriff's

5 deputy-involved death of Richard Hayes on March 21, 2021.

6

**PARTIES**

7  5.  At all relevant times, Decedent Richard Hayes ("DECEDENT") was an

8 individual residing in the County of Los Angeles, California.

9  6.  Plaintiff A.H. is a minor individual residing in County of Los Angeles,

10 California, and is the natural born son to DECEDENT. A.H. sues by and through his

11 Guardian *ad Litem*, TIFFANY HAYES. A.H. sues both in his individual capacity as

12 the son of DECEDENT and in a representative capacity as a successor-in-interest to

13 DECEDENT pursuant to California Code of Civil Procedure § 377.30. A.H. seeks

14 survival damages, including pre-death mental and physical pain and suffering, loss of

15 life, and loss of enjoyment of life, and wrongful death damages under federal and

16 state law.

17  7.  Plaintiff S.H. is a minor individual residing in County of Los Angeles,

18 California, and is the natural born daughter to DECEDENT. S.H. sues by and

19 through her Guardian *ad Litem*, TIFFANY HAYES. S.H. sues both in her individual

20 capacity as the daughter of DECEDENT and in a representative capacity as a

21 successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure

22 § 377.30. S.H. seeks survival damages, including pre-death mental and physical pain

23 and suffering, loss of life, and loss of enjoyment of life, and wrongful death damages

24 under federal and state law.

25  8.  Plaintiff TIFFANY HAYES is an individual residing in County of Los

26 Angeles, California, and is the wife of DECEDENT. TIFFANY HAYES sues in her

27 individual capacity and in a representative capacity as a successor-in-interest to

28

DECEDENT as the wife of DECEDENT pursuant to California Code of Civil Procedure § 377.30.  TIFFANY HAYES seeks survival damages, including pre-death mental and physical pain and suffering, loss of life, and loss of enjoyment of life, and wrongful death damages under federal and state law.

9.    At all relevant times, Defendant COUNTY OF LOS ANGELES ("COUNTY") is and was a duly organized public entity existing under the laws of the State of California.  COUNTY is a chartered subdivision of the State of California with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the County of Los Angeles Sheriff's Department and its agents and employees.

10.    At all relevant times, COUNTY was the employer of Defendants DOES 1-10, inclusive.

11.    Defendant DOES 1-6 ("DOE DEPUTIES") are Sheriff's deputies for the County of Los Angeles Sheriff's Department.  DOE DEPUTIES were acting under color of law within the course and scope of their duties as deputies for the County of Los Angeles Sheriff's Department.  DOE DEPUTIES were acting with the complete authority and ratification of their principal, Defendant COUNTY.

12.    Defendant DOES 7-8 are supervisory deputies for the County of Los Angeles Sheriff's Department who were acting under color of law within the course and scope of their duties as supervisory deputies for the County of Los Angeles Sheriff's Department.  DOES 7-8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

13.    Defendants DOES 9-10 are managerial, supervisorial, and policymaking employees of the County of Los Angeles Sheriff's Department, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the County of Los Angeles Sheriff's

Department.  DOES 9-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

14.     On information and belief, at all relevant times, DOES 1-10 were residents of the County of Los Angeles.

15.     In doing the acts, and failing and/or omitting to act as hereinafter described, Defendants DOES 1-6 were acting on the implied and actual permission and consent of Defendants COUNTY and DOES 7-10.

16.     In doing the acts, and failing and/or omitting to act as hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of the COUNTY.

17.     The true names and capacities, whether individual, corporate, association or otherwise of Defendant DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

18.     At all times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and/or employment of each and every Defendant.

19.     All of the acts and omissions complained of herein by Plaintiffs against Defendants, were done and performed by said Defendants, by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

20.     DOES 1-10 are sued in their individual capacities.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

21.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 20 of this Complaint with the same force and effect as if fully set forth herein.

22.     On March 21, 2021, at approximately 7:30 p.m., at or around Lycoming Street, Diamond Bar, California 91789, several County of Los Angeles Sheriff's deputies, including DOE DEPUTIES, unreasonably detained and/or arrested DECEDENT Richard Hayes, and used excessive and unreasonable force, ultimately resulting in his death.

23.     Without reasonable suspicion to believe DECEDENT had or was going to violate the law, or probable cause to arrest DECEDENT, Defendants DOE DEPUTIES approached DECEDENT and attempted to forcibly restrain him.  No crime was committed by DECEDENT, nor did the deputies reasonably perceive that a crime was about to be committed when they arrived on scene.

24.     On information and belief, prior to Defendants' making contact with DECEDENT, Defendants' had information that DECEDENT had a mental disability. DECEDENT did in fact have a mental disability.

25.     Defendants DOE DEPUTIES were responding to a call to assist DECEDENT while he was inside of his home for a potential mental impairment. Defendants DOE DEPUTIES contacted DECEDENT inside his home.

26.     On information and belief, Defendants also perceived DECEDENT'S disability and recognized DECEDENT to be in medical distress.

27.     Defendants DOE DEPUTIES had no information that DECEDENT had committed any crime, no information that DECEDENT had injured or threatened to harm anyone, and no information that DECEDENT had any weapon.  Defendants DOE DEPUTIES failed to employ tactics to de-escalate the situation, failed to give DECEDENT time and space to understand the deputies' presence, failed to approach

and speak to DECEDENT in a non-threatening manner, failed to give DECEDENT time and space to understand and comply with the deputies' commands, and failed to give DECEDENT the opportunity to consent to and cooperate with police instructions.  DECEDENT never threatened any of the Defendants or any other person, made no aggressive movements toward any of the Defendants or any other person, made no furtive gestures, and no physical movements that would reasonably suggest to the Defendants that DECEDENT was attempting, willing, or intending to inflict harm on any other person.

28.    Despite the foregoing facts, Defendants DOE DEPUTIES placed their body weight on, tased, and used yet-to-be-discovered uses of force against DECEDENT, all while DECDENT was restrained and chest-down for an extended period of time.

29.    Defendants DOE DEPUTIES meaningfully participated in the detention of, and use of force against DECEDENT, by either directly using force against DECEDENT, going hands-on with DECEDENT during the incident, ordering another Defendant to use excessive and unreasonable force against DECEDENT, providing the means by which force was used against DECEDENT, physically restraining DECEDENT, violently intimidating DECEDENT, and/or failing to provide medical aid to DECEDENT.  Defendants DOE DEPUTIES also integrally participated in the use of force and violence as described herein, as well as failed to instruct any other Defendant not to use force against the DECEDENT, failed to provide medical aid to DECEDENT, and failed to intervene to stop the unreasonable and excessive force being used against DECEDENT.

30.    As a result of the excessive force, DECEDENT endured severe harm, injury, mental and physical pain and suffering, loss of life, loss of enjoyment of life, and loss of earning capacity.  At the time of the Defendants DOE DEPUTIES' use of excessive force against him, DECEDENT did not pose a risk of death or serious

COMPLAINT FOR DAMAGES

bodily injury to any person, DECEDENT did not pose a risk of injury to any person, DECEDENT was not resisting detention or arrest, and had not committed a crime. Instead, DECEDENT was having a mental health crisis. DECEDENT cried out in pain, struggled to breathe, lost consciousness, and eventually died as a result of his injuries.

31. After DECEDENT lost consciousness, the Defendants DOE DEPUTIES failed to timely provide medical assistance to DECEDENT.

32. As a result of Defendants DOE DEPUTIES' use of excessive and unreasonable force, DECEDENT suffered multiple abrasions to his extremities. Due to the excessive and unreasonable restraint and force, Defendants caused DECEDENT's death.

33. Upon information and belief, Defendants DOE DEPUTIES did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT was a contributing cause of DECEDENT'S harm, injury, pain and suffering, and ultimate death.

34. The use of force against DECEDENT was excessive and objectively unreasonable under the circumstances, especially because DECEDENT was unarmed, had committed no crime, was in need of medical assistance, and did not pose an immediate threat of death or serious bodily injury to anyone, at any time immediately prior to or during the use of force, and was suspected of being mentally impaired.

35. Plaintiff A.H. is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT'S interest in this action as the natural son of DECEDENT.

36. Plaintiff S.H. is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT'S interest in this action as the natural daughter of DECEDENT.

37.     Plaintiff TIFFANY HAYES is DECEDENT's successor-in-interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT'S interest in this action as the wife of DECEDENT.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants DOE DEPUTIES)

38.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 37 of this Complaint with the same force and effect as if fully set forth herein.

39.     Defendants DOE DEPUTIES had no information that DECEDENT had committed any crime, had no information that DECEDENT had any outstanding wants or warrants, and had no information that DECEDENT had harmed any person. Defendants did, however, have constructive and actual knowledge that DECEDENT was in need of medical care.  Defendants DOE DEPUTIES unreasonably detained and arrested DECEDENT without reasonable suspicion or probable cause.

40.     When Defendants detained, tased, and restrained DECEDENT for approximately 5-10 minutes, and otherwise restricted DECEDENT'S liberty and freedom of movement, they violated DECEDENT's right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

41.     The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

42.     As a result of their misconduct, Defendants are liable for DECEDENT'S injuries because they were an integral participant and/or because they failed to intervene to prevent the wrongful detention and arrest of DECEDENT.

43.     Plaintiffs bring this claim as successors-in-interest to the DECEDENT, and seek survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life for the violation of DECEDENT'S rights.  Plaintiffs also seek attorneys' fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment —Excessive Force (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants DOE DEPUTIES)

44.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 43 of this Complaint with the same force and effect as if fully set forth herein.

45.     The Fourth Amendment to the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

46.     Defendants DOE DEPUTIES had no information that DECEDENT had committed any crime, had no information that DECEDENT had any outstanding wants or warrants, and had no information that DECEDENT had harmed any person. On the other hand, Defendants had constructive and actual knowledge that Decedent was in need of medical care.  Defendants lacked reasonable suspicion to detain DECEDENT and lacked probable cause to arrest DECEDENT.

47.     When Defendants DOE DEPUTIES arrived on scene, they had no information that DECEDENT had committed any crime and no information that decedent had injured or threatened to harm anyone.  Defendants had reason to know and/or did know that DECEDENT was mentally ill or impaired.  Rather than acting

reasonably by responding to the call in a manner conducive to assisting someone who is mentally ill or impaired, Defendants improperly treated DECEDENT as if he had committed a serious crime, which he had not. Defendants failed to employ tactics to de-escalate the situation, failed to give DECEDENT time and space to understand the police presence, failed to approach and speak to DECEDENT in a non-threatening manner, and failed to give DECEDENT the opportunity to understand and cooperate with police instructions. DECEDENT never threatened anyone, made no aggressive movements toward any of anyone, made no furtive gestures, and no physical movements that would reasonably suggest to the Defendants that DECEDENT was attempting, willing, or intending to inflict harm on any person.

48. Defendants DOE DEPUTIES used excessive force against DECEDENT when they unnecessarily and unreasonably brought DECEDENT to the ground with force and violence, tased DECEDENT multiple times without warning, and restrained DECEDENT chest down for an extended period of time. Defendants' acts and omissions deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

49. As a result of the foregoing, DECEDENT suffered great physical pain and suffering up to the time of his death, loss of enjoyment of his life, loss of his life, and loss of his earning capacity. Defendants are liable for DECEDENT'S harm, injuries, and death because they were an integral participants and/or because they failed to intervene to prevent these violations.

50. The conduct of Defendants was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

51.     The force used was excessive and unreasonable, but because Defendants used deadly force against and unarmed, chest down, restrained, and outnumbered individual, their conduct was particularly egregious.  DECEDENT posed no immediate threat of death or serious bodily injury at the time during the incident. Further, Defendants' use of force violated their training and standard police officer training.

52.     Plaintiffs bring this claim as successors-in-interest to the DECEDENT, and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life for the violation of DECEDENT'S rights. Plaintiffs also seek attorneys' fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

### Fourth Amendment —Denial of Medical Care (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants DOE DEPUTIES)

53.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 52 of this Complaint with the same force and effect as if fully set forth herein.

54.      The denial of medical care by Defendants DOE DEPUTIES deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

55.     Defendants DOE DEPUTIES failed to provide needed medical care to DECEDENT, failed to timely summon needed medical care for DECEDENT, prevented medical care personnel from timely treating DECEDENT, and refused to permit medical care personnel to access and care for DECEDENT at the scene for an appreciable time after the incident.

56.     As a result of the foregoing, DECEDENT suffered great physical pain and suffering up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

57.     Defendants DOE DEPUTIES knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury, the unnecessary and wanton infliction of pain, or death, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

58.     The conduct of Defendants DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES.

59.     As a result of their misconduct, DOE DEPUTIES are liable for DECEDENT'S injuries, either because they were integral participants in the denial of medical care, and/or because they failed to intervene to prevent these violations.

60.     Plaintiffs bring this claim as successors-in-interest to the DECEDENT, and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life for the violation of DECEDENT'S rights. Plaintiffs also seek attorneys' fees and costs under this claim.

## **FOURTH CLAIM FOR RELIEF**

### **Substantive Due Process (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants DOE DEPUTIES)

61.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 60 of this Complaint with the same force and effect as if fully set forth herein.

62.     Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions

that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in Plaintiffs' familial relationship with DECEDENT.

63.     DECEDENT had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience.

64.     The aforementioned actions of Defendants DOE DEPUTIES, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

65.     As a direct and proximate result of these actions, DECEDENT experienced pain and suffering, and eventual death.  Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationships with DECEDENT.

66.     As a direct and proximate cause of the acts of Defendants DOE DEPUTIES, Plaintiffs have suffered emotional distress, mental anguish, and pain. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

67.     The conduct of Defendants DOE DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE DEPUTIES.

68.     Plaintiffs bring this claim individually for wrongful death damages. Plaintiffs also seek attorney fees and costs under this claim.

**FIFTH CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(By All Plaintiffs against Defendants COUNTY and DOES 7-10)

69.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 68 of this Complaint with the same force and effect as if fully set forth herein.

70.     Defendants DOE DEPUTIES acted under color of law.

71.     The acts of Defendants DOE DEPUTIES deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

72.     The training policies of Defendants COUNTY and DOES 7-10, were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.

73.     Defendants COUNTY and DOES 7-10 were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

74.     On information and belief, COUNTY and DOES 7-10 failed to train Defendants DOE DEPUTIES properly and adequately.

75.     The failure of COUNTY and DOES 7-10 to provide adequate training caused the deprivation of DECEDENT and Plaintiffs' rights by Defendants DOE DEPUTIES that is, the Defendants' failure to train is so closely related to the deprivation of the DECEDENT'S and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

76.     The training policies of Defendant COUNTY were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including responding to calls involving mentally ill people, responding to calls and interacting with people who display symptoms of mental illness, recognizing the indicators of mental illness, the use of force, the proper use of electronic control devices, the permissible use of impact weapons, and protecting the rights of persons

to medical care while in police custody.  Additionally, those training policies do not conform to nationally accepted standards in police practices.

77.     The field training provided by COUNTY was inadequate to train its deputies to handle the usual and recurring situations with which they must deal, including responding to calls involving mentally ill people, responding to calls and interacting with people who display symptoms of mental illness, recognizing the indicators of mental illness, the use of force, the proper use of electronic control devices, the permissible use of impact weapons, and protecting the rights of persons to medical care while in police custody.

78.     The sustainment and/or periodic training provided by COUNTY was inadequate to train its deputies to handle the usual and recurring situations with which they must deal, including responding to calls involving mentally ill people, responding to calls and interacting with people who display symptoms of mental illness, recognizing the indicators of mental illness, the use of force, the proper use of electronic control devices, the permissible use of impact weapons, and protecting the rights of persons to medical care while in police custody.

79.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT'S pain and suffering, loss of life, loss of enjoyment of life, and death.

80.     Accordingly, Defendants COUNTY and DOES 7-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

81.     Plaintiffs bring this claim as successors-in-interest to DECEDENT, and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life, and wrongful death damages under this claim. Plaintiffs also seek attorneys' fees and costs under this claim.

1

## **SIXTH CLAIM FOR RELIEF**

2

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

3

(By All Plaintiffs against Defendants COUNTY and DOES 7-10)

4    82.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

5  through 81 of this Complaint with the same force and effect as if fully set forth

6  herein.

7    83.    Defendants DOE DEPUTIES acted under color of law.

8    84.    Defendants DOE DEPUTIES acted pursuant to an expressly adopted

9  official policy, or a longstanding practice or custom of the Defendants COUNTY and

10  DOES 7-10.

11    85.    On information and belief, Defendants DOE DEPUTIES were not

12  disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection

13  with DECEDENT'S death.

14    86.    Defendants COUNTY and DOES 7-10, together with other COUNTY

15  policymakers and supervisors, maintained, inter alia, the following unconstitutional

16  customs, practices, and policies:

17    (a)    Using excessive force, including deadly force on unarmed persons

18        who do not pose a risk of imminent death or serious bodily injury

19        to others;

20    (b)    Providing inadequate training regarding the use of force,

21        including deadly force;

22    (c)    Employing and retaining as deputy Sheriffs, individuals such as

23        Defendants DOE DEPUTIES who Defendants COUNTY and

24        DOES 7-10 at all times material herein, knew or reasonably

25        should have known had dangerous propensities for abusing their

26        authority and for using excessive force;

27

28

(d)    Inadequately supervising, training, controlling, assigning, and disciplining COUNTY deputies, and other personnel, including Defendants DOE DEPUTIES, who Defendants COUNTY, and/or DOES 7-10 knew, or in the exercise of reasonable care should, have known had the aforementioned propensities and character traits;

(e)    Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by COUNTY deputies and PERT Clinicians, including Defendants DOE DEPUTIES;

(f)    Failing to adequately discipline COUNTY deputy Sheriffs, including Defendants DOE DEPUTIES for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g)    Announcing that unjustified uses of force are "within policy," including in-custody deaths that were later determined in court to be unconstitutional;

(h)    Even where in-custody deaths are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the deputies involved;

(i)    Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which Sheriff's deputies do not report other deputies' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of

misconduct involving another deputy, while following the code, the deputy being questioned will claim ignorance of the other deputy wrongdoing.

(j)   Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of in-custody deaths, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in the in-custody-death of unarmed, nonviolent, compliant, and/or potentially mentally impaired people.

87.   By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT'S pain and suffering, loss of enjoyment of life, and death.

88.   Defendants COUNTY and DOES 7-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

89.   By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, COUNTY and DOES 7-10 acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT'S and Plaintiffs' Constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and

DOES 7-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

90.    Accordingly, Defendants COUNTY and DOES 7-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

91.    Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT, and seeks survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life, and wrongful death damages under this claim.  Plaintiffs also seek attorneys' fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By All Plaintiffs against Defendants COUNTY and DOES 7-10)

92.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 91 of this Complaint with the same force and effect as if fully set forth herein.

93.    Defendants DOE DEPUTIES acted under color of law.

94.    The acts of Defendants DOE DEPUTIES deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

95.    Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants DOE DEPUTIES ratified the individual deputy and clinician defendant's acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of the individual deputy and clinician defendant's acts.

96.    Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants DOE DEPUTIES were "within policy."

97.    The following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise

penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the County of Los Angeles routinely ratifies such behavior:

a) The August 31, 2020 death of Dijon Kizzee.

b) On March 15, 2022, Los Angeles County agreed to pay $3.8 million to the family of Brian Pickett, a man who died after Los Angeles County Sheriff's deputies tased him for a total of 29 seconds.

c) The June 26, 2019 shooting of Timothy Neal in his home; Case No. 2:20-cv-06315-CBM-JC; the deputies were not disciplined, reprimanded, retrained, or otherwise penalized for their actions.

d) The July 3, 2019 shooting death of the unarmed Rickie Starks; Case No. 19STCV38462, Case No.: 2:21-cv-05209 ODW (GJSx).

e) The August 16, 2017 shooting death of Kenneth Lewis, Jr.; Case No.: 2:18-cv-04910-CBM-SK, which the County settled for $1,025,000.00.

f) In *Berry, et al. v. County of Los Angeles*, et al., Case No.: 15-cv-09715-BRO (KSx); in events captured on video, numerous Los Angeles County deputies was beat, pepper sprayed, tased, and fired over 30 bullets without warning at John Berry while seated in his car and killing him.  Upon information and belief, the County found that the deputies use of force was within policy, and none of the deputies were disciplined, reprimanded, retrained, suspended, or otherwise penalized for their actions.

g) In *V.W., et al. v. County of Los Angeles, et al*., Case No.: 2:18-cv-03684-FMO-ARG; on February 4, 2018 Deputy Gregory Van Hoesen shot and killed the 16-year-old Anthony Weber, shooting him in the back while unarmed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

h) In *K.C.R., et al. v. County of Los Angeles*, *et al.,* Case No.: 2:13-cv-03806-PSG-SS, on June 21, 2012, the unarmed Kenneth Rivera III was shot and killed by Deputy Norma Silva.

i) In *C.M., et al. v. County of Los Angeles, et al*., Case No.: 2:17-cv-05135-VAP-AGR, on August 2, 2016, Deputy Jeffrey Brito shot and killed the unarmed William Bowers.  On information and belief, Deputy Brito was not disciplined, reprimanded, retrained, suspended, or otherwise penalized for his actions.

j) In *Mitchell v. County of Los Angeles, et al*., Case No.: CV-8421-RJK (AWx), Defendant COUNTY argued that the use of deadly force against an unarmed civilian (Robert Mitchell) was reasonable; the jury found otherwise, returning a $4,000,000 verdict after finding that Deputy Rick Manes used excessive and unreasonable force when he shot the unarmed Mr. Mitchell in the back six times, killing him.  Deputy Manes was not disciplined or retrained for his use of deadly force.

k) In *Gutierrez, et al. v. County of Los Angeles, et al*., Case No.: CV-10-7608 PSG (AJWx), a jury found that Deputy David Salazar used excessive and unreasonable force when he shot and killed Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000.  Deputy Salazar was not disciplined or retrained for his use of deadly force.

l) In *Beets v. County of Los Angeles, et al*., Case No.: KC-057667, a jury determined that the use of deadly force by the defendant County deputy, was excessive and unreasonable under the circumstances, and returned a $1,035,000 verdict in favor of the plaintiff.

m) In *Jacobo, et al. v. County of Los Angeles, et al.*, Case No.: CV-11-7212 GW (SSx), on August 8, 2009, County Deputy Mat Taylor shot and killed Ezequiel Jacobo, who was unarmed.  Police reports confirmed that Mr. Jacobo was unarmed.  Deputy Taylor was not disciplined or retrained for shooting Mr. Jacobo.

n) In *Lobrono, et al. v. County of Los Angeles, et al.,* Case No.: CV-13-03838, on February 1, 2013, County Deputy Ray Huang shot Michael Lobrono, who was unarmed.  Police reports confirmed that Mr. Lobrono was unarmed.  Deputy Huang was not disciplined or retrained for his use of deadly force.

o) In *Sanchez v. County of Los Angeles, et al.,* Case No.: CV 13-0383; on April 20, 2013, County Deputy Christopher Gomez shot Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting.  Police reports confirmed that Mr. Sanchez was unarmed.  Deputy Gomez was not disciplined or retrained for his use of deadly force.

p) In *N.K.A., et al. v. County of Los Angeles, et al.*, Case No.: CV 13-05507; on May 11, 2013, County Deputy Luis Mendoza shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting.  Police reports confirmed that Mr. Arceo was unarmed.  Deputy Mendoza was not disciplined or retrained for his use of deadly force.

q) In *D.A.B., et al. v. County of Los Angeles, et al.,* Case No.: CV-14-05207 FMO (ASx); on May 23, 2013, County Deputies Dru Strong and Gregory Rodriguez shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time

he was shot.  Deputies Strong and Rodriguez were not disciplined or retrained for their use of deadly force.

r) In *Gonzalo Martinez v. County of Los Angeles, et al.*, Case No.: 2:14-cv-05456-DSF-MAN, County Deputy Cuauhtemoc Gonzalez discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was an unarmed backseat passenger. Deputy Gonzalez was not disciplined or retrained for his use of deadly force.

s) In *Belia C.M., et al. v. County of Los Angeles, et al.*, Case No.: 2:15-cv-09585-SJO-FFM, Deputy Espinosa shot and killed Tony C.M., who was unarmed at the time of the shooting.  On information and belief, Deputy Espinosa as not disciplined or retrained for his use of deadly force.

t) In *Marian Amaya, et al., v. County of Los Angeles, et al.,* Case No.: VC062384, on information and belief, County deputies shot and killed Emiliano Amaya, with shots to Mr. Amaya's back.  On information and belief, the deputies were not disciplined or retrained for their use of deadly force.

u) The August 4, 2013 shooting of the unarmed Gonzalo Martinez; Case No.: 2:14-cv-05456-DSF-MAN.

98.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT'S pain and suffering, loss of life, loss of enjoyment of life, and death.

99.    Accordingly, Defendants COUNTY and DOES 7-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

100.   Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT, and seek survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life, and wrongful death damages under this claim.

## EIGHTH CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By All Plaintiffs against Defendants COUNTY; DOES 7-10; and DOE DEPUTIES)

101.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 100 of this Complaint with the same force and effect as if fully set forth herein.

102.   Defendants DOE DEPUTIES, while working as Deputies for the County of Los Angeles Sheriff's Department and acting within the course and scope of their duties, intentionally deprived DECEDENT of his freedom of movement by use of force, threats of force, violence, menace, fraud, deceit, and unreasonable duress. Defendants DOE DEPUTIES detained DECEDENT without reasonable suspicion and arrested him without probable cause.

103.   DECEDENT did not knowingly or voluntarily consent.  DECEDENT was merely attempting to exercise his right to walk away.

104.   Defendants DOE DEPUTIES detained DECEDENT for an appreciable amount of time by taking DECEDENT to the ground, holding DECEDENT on the ground, tasing, and threatening DECEDENT, making him otherwise feel that he was not free to leave.

105.   The conduct of DOE DEPUTIES was a substantial factor in causing the harm to DECEDENT.

106.   Defendant COUNTY and DOES 7-10 are vicariously liable for the wrongful acts of Defendants DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the

injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability, under California law, and under the doctrine of *respondeat superior*.

107.   The conduct of Defendants DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of DECEDENT, entitling Plaintiffs to an award of exemplary and punitive damages.

108.   As a result of their misconduct, Defendants DOE DEPUTIES are liable for DECEDENT'S injuries, either because they were integral participants in the wrongful detention and arrest, and/or because they failed to intervene to prevent these violations.

109.   Plaintiffs bring this claim as successors-in-interest to DECEDENT, and seek survival damages, including emotional distress, loss of life, and loss of enjoyment of life.

## NINTH CLAIM FOR RELIEF

### Battery

(By All Plaintiffs against Defendants COUNTY, DOES 7-10, and DOE DEPUTIES)

110.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 109 of this Complaint with the same force and effect as if fully set forth herein.

111.   Defendants DOE DEPUTIES, while working as deputies and/or agents of the County of Los Angeles Sheriff's Department, and acting within the course and scope of their duties, intentionally grabbed, tased, restrained DECEDENT chest down, and used unreasonable force against him.  As a result of the actions of Defendants DOE DEPUTIES, DECEDENT suffered severe pain and suffering, loss of enjoyment of life, and ultimately died from his injuries.  Defendants DOE DEPUTIES had no legal justification for using force against DECEDENT, and their

use of force while carrying out their duties as deputies and agents of the COUNTY were unreasonable and nonprivileged uses of force.

112.   As a direct and proximate result of the conduct of Defendants DOE DEPUTIES as alleged above, DECEDENT sustained injuries and died, and also lost his earning capacity.

113.   COUNTY and DOES 7-10 are vicariously liable for the wrongful acts of Defendants DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability, under California law, and under the doctrine of *respondeat superior*.

114.   The conduct of Defendants DOE DEPUTIES was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and DECEDENT, entitling Plaintiffs, individually and as successors-in-interest to DECEDENT, to an award of exemplary and punitive damages.

115.   Plaintiffs bring this claim individually and as successors-in-interest to the DECEDENT, and seek wrongful death damages under this claim.

## TENTH CLAIM FOR RELIEF

**Negligence, Negligent Infliction of Emotional Distress, and Negligent Training**

(By All Plaintiffs against All Defendants)

116.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 115 of this Complaint with the same force and effect as if fully set forth herein.

117.   Sheriff's deputies, including Defendants have a duty to use reasonable care to prevent harm or injury to others.  This duty includes using appropriate tactics, giving appropriate commands, giving appropriate warnings, and not using any force

unless necessary, using the least amount of force necessary, and only using deadly force as a last resort.  These duties also include providing proper training and equipment to deputies so that they may perform their duties in accordance with the department policies, properly investigate use of force incidents, and punish, re-train, terminate, and/or prosecute violators of those policies and the law.

118.   Defendants breached this duty of care.  Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

(a)   The failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against DECEDENT;

(b)   The failure to recognize the indicators of mental illness or impairment, and/or the failure to use proper tactics and techniques on person suffering from a mental illness.

(c)   The negligent tactics and handling of the situation with DECEDENT, including pre-force negligence;

(d)   The negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(e)   The failure to provide prompt medical care to DECEDENT;

(f)   The failure to properly train deputies to properly handle encounters with people suffering from a mental illness, to properly assess the need to use force, and the type of force appropriate;

(g)   The failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

(h)   The negligent handling of evidence and witnesses;

(i)   The negligent communication of information during the incident;

(j)     The negligent investigation of the incident; and

(k)     The failure to punish, re-train, terminate, and/or prosecute violators of Department policies and the law.

119.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering, and eventual death.  Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have suffered emotional distress and mental anguish.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

120.   While working for COUNTY and acting within the course and scope of their duties as sheriff's deputies, DOE DEPUTIES negligently and carelessly inflicted severe emotional distress on Plaintiffs when they forcibly took DECEDENT to the ground, tased, piled on DECEDENT'S back, and restrained DECEDENT, all in the presence of Plaintiffs S.H. and TIFFANY HAYES.

121.   Plaintiffs were present at or near the scene of the incident when the use of force against their family member, DECEDENT, occurred, observed the incident, and were aware that Defendants' actions were causing injury to DECEDENT.

122.   Defendants' conduct was a substantial factor in causing Plaintiffs to suffer severe emotional distress, including but not limited to, paralyzing fear, anxiety, anguish, humiliation, and other injuries to their nervous systems.

123.   COUNTY and DOES 7-10 are vicariously liable for the wrongful acts of Defendants DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability, under California law, and under the doctrine of *respondeat superior*.

124.   Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT, and seek wrongful death damages under this claim. Plaintiffs also seek compensatory damages for their severe emotional distress resulting from observing the negligent use of force against their family member, DECEDENT.

## ELEVENTH CLAIM FOR RELIEF

**(Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 (42 U.S.C. § 12132 and 29 U.S.C. § 794)**

(By All Plaintiffs against Defendant COUNTY)

125.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 124 of this Complaint with the same force and effect as if fully set forth herein.

126.   Plaintiffs allege as a claim for relief that Defendant COUNTY, in violation of the ADA, failed to provide DECEDENT with any reasonable accommodation to his qualifying disability during their interactions with DECEDENT on the day of his death.

127.   As providers of governmental services, the County of Los Angeles had a duty to comply with the Title II of the ADA prohibiting discrimination against persons with disabilities, a history of having disabilities or who are perceived to have a disability.  As of the date of his death, DECEDENT met all three prongs of eligibility for application of the ADA.

128.   The ADA prohibits public entities from discriminating against the disabled, and from excluding the disabled from participating in or benefitting from a public program, activity, or service solely by reason of disability.

129.   Plaintiffs allege three types of claims under Title II of the ADA: (1) a wrongful arrest claim, whereas Defendants arrested DECEDENT based on his disability, not for any criminal activity; (2) a failure to provide reasonable

accommodations, whereas Defendants failed to reasonably accommodate DECEDENT'S disability during the investigation or arrest, causing him to suffer greater injury and indignity than other arrestees; and (3) COUNTY'S failure to train its agents and employees to recognize, aid, and accommodate persons with disabilities, causing DECEDENT to suffer mental and emotional pain, and death.

130.   Defendant COUNTY is a public entity, and is therefore liable for violations of the ADA.

131.   DECEDENT suffered from mental disabilities.  DECEDENT is a qualified individual with a disability under the ADA.  DECEDENT'S conduct demonstrated his disabilities.

132.   Defendants had information that DECEDENT was experiencing a mental health episode at the time.  Because of DECEDENT'S apparent mental disability and information known to Defendants at the time, Defendants knew or should have known that DECEDENT suffered from mental disabilities.

133.   DECEDENT was arrested because of symptoms of his disability; i.e., DECEDENT was wrongfully arrested because of his disability.  DECEDENT'S actions were not unlawful, should not have been perceived as such, but were due to his disabilities.

134.   During DECEDENT'S arrest, he was tased and restrained with a knee on the back of his neck as he gasped for air, which is indicative of abuse, violence, discrimination, a failure to accommodate, and injury that could reasonably be expected to cause DECEDENT greater indignity than other arrestees.

135.   Defendants failed to de-escalate the situation, failed to communicate with DECEDENT properly, failed to provide DECEDENT space, time, and reassurance.  Defendants' actions are indicative of their failure to provide DECEDENT with reasonable accommodation for his disabilities.

136.   The ADA also requires public entities to be trained on disability, to include, but not limited to, how to recognize and aid people having a disability.

137.   Defendants were not adequately trained on disability, which caused DECEDENT'S pain and suffering, loss of life, loss of enjoyment of life, and death.

138.   The Defendants misperceived the effect of DECEDENT'S apparent disability as illegal conduct and therefore wrongfully detained and arrested him. Defendants failed to recognize and aid DECEDENT, who suffered from a disability. The aforementioned caused DECEDENT'S pain and suffering, loss of life, loss of enjoyment of life, and death.

139.   Defendants failed to properly investigate and interact with DECEDENT in a manner that reasonably accommodated his disabilities.

140.   Because of the above, DECEDENT was excluded from and/or denied of benefits, as well as discriminated against by reason of the DECEDENT'S disability.  Plaintiffs allege that this was a result of Defendant's failure to train its deputies on disability.

141.   As a direct and proximate result of the Defendants' violation of the ADA as set forth above, DECEDENT incurred substantial emotional and physical harm.

142.   DECEDENT lost his life after incurring substantial pain and injury as a direct and proximate result of the Defendants' acts in violation of the ADA as set forth above.

143.   Plaintiffs bring this claim individually and as successors-in-interest to DECEDENT, and seek compensatory and punitive damages, wrongful death damages and survival damages, including pre-death pain and suffering, loss of life, and loss of enjoyment of life under this claim.

144.   Plaintiffs also seek attorneys' fees and costs under this claim.

**TWELFTH CLAIM FOR RELIEF**

**(Violation of Cal. Civil Code § 51.7)**

(By All Plaintiffs against All Defendants)

145.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 144 of this Complaint with the same force and effect as if fully set forth herein.

146.   Plaintiff alleges that Defendants used violence on and intimidated DECEDENT, because of a perceived disability, when Defendants swarmed, detained, forcibly took DECEDENT to the ground, tased, piled on DECEDENT'S back, and restrained DECEDENT, all while DECEDENT gasped for air.

147.   California Civil Code § 51.7 declares that all persons have the right to be free from violence or intimidation because of their disability, or because they are perceived by another to have a disability.

148.   Defendants used violence and intimidation against DECEDENT.

149.   DECEDENT had mental disabilities.

150.   Defendants used violence and intimidation because they perceived DECEDENT'S disability, were motivated by it, or because of a bias against it.

151.   COUNTY is vicariously liable for the wrongful acts of Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

152.   Defendants DOES 7-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

153.   Under the provisions of California Civil Code §52(b), Defendants are liable for punitive damages for each violation of Civil Code §51.7, reasonable attorneys' fees and an additional $25,000.00.

154.   Plaintiffs bring this claim as successors-in-interest to DECEDENT, and seek compensatory, punitive damages, and survival damages, including emotional distress, loss of life, and loss of enjoyment of life under this claim.

155.   Plaintiffs also seeks attorneys' fees and cost under this claim.

## THIRTEENTH CLAIM FOR RELIEF

### (Violation of Cal. Civil Code § 52.1)

(By all Plaintiffs against All Defendants)

156.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 155 of this Complaint with the same force and effect as if fully set forth herein.

157.   Under California Civil Code, Section 52.1 (the Bane Act), whether or not acting under color of law, prohibits interference by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of the state of California.

158.   On information and belief, Defendants DOE DEPUTIES, while working for the COUNTY and acting within the course and scope of their duties, intentionally committed acts of violence, threats, intimidation, and coercion against DECEDENT, including taking DECEDENT to the ground, tasing, and restraining DECEDENT chest down without justification or excuse, by integrally participating and/or failing to intervene in the above act, and by denying DECEDENT necessary medical care, which interfered with DECEDENT'S and Plaintiffs' exercise and/or enjoyment of their rights secured by the Constitution and/or laws of the United States, and of the rights secured by the Constitution and/or laws of the state of California.

159.   When Defendants used excessive and unreasonable force against DECEDENT, they interfered with his civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

160.   On information and belief, Defendants intentionally and spitefully committed the above acts to discourage DECEDENT from exercising his civil rights or to prevent him from exercising such rights, which he was fully entitled to enjoy.

161.   On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by Defendants DOE DEPUTIES were intended to discourage him from exercising the above civil rights or to prevent him from exercising such rights.

162.    Defendants DOE DEPUTIES successfully interfered with the above civil rights of DECEDENT.

163.   The conduct of Defendants was a substantial factor in causing DECEDENT'S harms, losses, injuries, and damages.

164.   COUNTY is vicariously liable for the wrongful acts of Defendants DOE DEPUTIES pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

165.   Defendants DOES 7-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

166.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT'S rights, justifying an award of exemplary and punitive damages as to Defendants DOE DEPUTIES.

167.   Plaintiffs bring this claim as successors-in-interest to DECEDENT and seeks survival damages, including emotional distress, loss of life, and loss of enjoyment of life, under this claim.  Plaintiffs also seek treble damages, attorneys' fees, and costs under this claim.

/ / /

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs A.H., S.H., and TIFFANY HAYES request entry of judgment in their favor and against COUNTY OF LOS ANGELES; and DOES 1-10, inclusive, as follows:

A.     For compensatory damages in whatever other amount may be proven at trial, including survival damages, which include pre-death physical and mental pain and suffering, loss of life, and loss of enjoyment of life, as well as wrongful death damages under federal and state law;

B.     For funeral and burial expenses, and loss of financial support;

C.     For punitive damages against the individual defendants in an amount to be proven at trial;

D.     For statutory damages;

E.     For interest;

F.     For reasonable attorneys' fees, including litigation expenses;

G.     For costs of suit; and

H.     For such further other relief as the Court may deem just, proper, and appropriate.

DATED:  May 27, 2022             LAW OFFICES OF DALE K. GALIPO


                                 By:_____/s/ Dale K. Galipo_____
                                        Dale K. Galipo
                                        *Attorney for Plaintiffs*

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury.

3

4

DATED:  May 27, 2022          LAW OFFICES OF DALE K. GALIPO

5

6

By: _____ */s/ Dale K. Galipo*_____

7

Dale K. Galipo
*Attorney for Plaintiffs*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES